KEYSTONE COAL & COKE CO. v. FEKETE et al.

(Circuit Court of Appeals, Sixth Circuit.    April 6, 1916.)

Nos. 2692-2695.

1. LIMITATION OF ACTIONS ☞122—COMMENCEMENT OF ACTION—INEFFECTIVE SERVICE.

In an action in which the period of limitation expired on December 24th a summons was issued, dated December 21st, and an attempted service was made on December 27th. On motion this service was set aside, but a motion to dismiss was denied, and defendants subsequently appeared generally, without any further summons and service. *Held* that, under Gen. Code Ohio, § 11230, providing that an action shall be deemed commenced as to each defendant at the date of the summons served on him, the action was commenced on December 21st, and was not barred, especially in view of section 11233, providing that, if plaintiff fails otherwise than upon the merits in an action commenced or attempted to be commenced in due time, he may commence a new action within a year after such failure.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 527, 538; Dec. Dig. ☞122.

For other definitions, see Words and Phrases, First and Second Series, Commencement of Action.]

2. DEATH ☞44—PARTIES—SUBSTITUTION.

In actions by administrators to recover for deaths occurring in another state, the petitions specified the surviving relatives, alleged that they had been injured by the deaths, and either stated expressly or showed by implication that the actions were brought for their benefit. On it appearing that under the law of the state where the deaths occurred the right of action vested in the surviving relatives, and not in the personal representatives, the court permitted a substitution of such surviving relatives as plaintiffs of record. *Held*, that this was not error, as the amendment made no change, except to substitute the real parties in interest for the plaintiff, who had supposed he was their trustee.

[Ed. Note.—For other cases, see Death, Dec. Dig. ☞44.]

3. PLEADING ☞430(2)—ISSUES, PROOF, AND VARIANCE—WAIVER OF OBJECTIONS.

Where, though the case was submitted to the jury and a recovery was permitted upon a theory of negligence not disclosed in the petition, defendant made no objection on the ground of variance to the evidence as it came in, or to the action of the court in submitting this theory, it waived any objection resting upon the variance.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1438-1441; Dec. Dig. ☞430(2); Trial, Cent. Dig. §§ 219, 266.]

4. MASTER AND SERVANT ☞285(1)—LIABILITY FOR INJURIES—EXPLOSIONS.

Employés of a mining company were killed or injured by an explosion of blasting powder, stored in a boarding house for company workmen conducted by W., while a party was in progress. Though the company claimed that W. was a lessee under a formal written lease, and that it, as lessor, had no control over the premises, and that the powder was solely in control of miners boarding in such house and kept there for their own convenience, there was evidence tending to show that the lease was a mere form, that the boarding house was for the company's benefit and completely under its control so far as it cared to exercise control, that the powder belonged to it and was kept there for its convenience, that the party was assembled with the assistance of its representative as a part of its policy of properly providing for the needs of its workmen, and

that its agent knew of the presence of the powder on the occasion in question. There was also evidence that it was negligence to maintain so large a store of powder in the place where it was kept under the circumstances. *Held*, that defendant was not entitled to an instructed verdict.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1008; Dec. Dig. ☞285(1).]

5. TRIAL ☞255(11)—INSTRUCTIONS—REQUEST.

While defendant was entitled to a charge making it clear to the jury that plaintiffs could not recover upon the theory upon which they did recover if the lease represented the contract between the company and W., and if the relations which it seemed to create were the ones actually existing, and while, if such charge had been requested, it would have been error to dispose of this matter with only the general statement that the jury must decide which party had the actual control and management of the premises and of the powder, the failure to give such instruction was not reversible error, in the absence of any request therefor.

, [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627–629; Dec. Dig. ☞255(11).]

6. APPEAL AND ERROR ☞216(1)—RESERVATION OF GROUNDS OF REVIEW—REQUESTING INSTRUCTIONS.

An exception to the failure to charge specifically as to some theory of recovery or defense is not sufficient upon which to predicate error, when there is no preliminary request for such instruction.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞216(1); Trial, Cent. Dig. §§ 627, 628, 630.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Wm. L. Day, Judge.

Four actions, by Michael Fekete, by Frank Thry, by Anna Helmlinger, and by Adam Muller, against the Keystone Coal & Coke Company. Judgments for plaintiffs, and defendant brings error. Affirmed.

The Keystone Company operated coal mines in Pennsylvania and owned the houses used by the men. One of these houses was occupied by Mr. and Mrs. Wilding; he worked in the mine, and she ran the house on her own account, as a boarding house for company workmen; a considerable quantity of blasting powder was stored in a closet off the room used for cooking and eating; Christmas eve, there was a "party" in this room; during the evening this powder blew up, killing some and injuring others; and these four suits were brought in a state court of Ohio (later removed to the court below because of diversity of citizenship) to recover for the injuries or deaths. The plaintiff in each of these cases recovered a verdict, and the Keystone Company brings error. The questions involved in the records are substantially the same in all four cases, except as hereinafter specified.

The meritorious questions involved were whether there was negligence in storing this powder in that location, whether the powder belonged to the company, and it had control of the premises, so as to make it liable for their dangerous condition, and whether there was contributory negligence. The plaintiff in error claims that, as matter of law, it was entitled to prevail on these issues, and also claims that the statute of limitations had run, and that a new plaintiff was erroneously substituted during the trial, and that there were errors in the charge to the jury.

Berkeley Pearce, of Cleveland, Ohio, W. S. Rial, of Greensburg, Pa., and James Mathers, of Cleveland, Ohio, for plaintiff in error.

C. S. Reed and Reed, Eichelberger & Nord, all of Cleveland, Ohio, for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above).  [1] 1. *Statute of Limitations.*  The injuries happened December 24, 1910, in Pennsylvania.  The Ohio statute referring to actions for death caused by wrongful act in another state, says:

"Every such action * * * shall be commenced within the time prescribed for the commencement of such action by the statute of such other state." Gen. Code Ohio, § 10770, as amended, 101 O. L. 198.

The Pennsylvania period of limitation for "such action" was one year.  Hence the period expired December 24, 1911.  The Ohio statutes further provide (G. C. § 11230) that:

"An action shall be deemed commenced, within the meaning of this chapter, as to each defendant, at the date of the summons which is served on him."

The summons issued on each of the three death claims in the state court was dated December 21, 1911, and, by the return of the sheriff, purported to be served on the Keystone Company December 27, 1911. Later this service was set aside, but a motion to dismiss the cause was denied.  This action was taken after a special appearance by the defendant for the purposes of the motion, and we assume that it was taken because the defendant corporation had not been reached by service upon the proper representative.  Still later, and without any further summons and service, defendant appeared generally in each action; and when these, after much delay, had reached the stage for answer, it relied upon the foregoing statutes of limitations.

In our judgment, each action was commenced on December 21st, and was not barred.  Certainly, defendant's general appearance must have been in an action then pending; there is nothing to indicate that it ever was commenced over again after the first attempt; we see no way to avoid the conclusion that defendant entered its appearance and filed its plea in the same action which had been commenced on December 21st.

We are confirmed in this conclusion by the view that if defendant had not thus appeared in this action, but had insisted upon an entire dismissal, plaintiff would have had the right to begin a new suit at any time within one year, under the Ohio statute (G. C. § 11233), providing that, if the plaintiff fails otherwise than upon the merits in an action commenced or attempted to be commenced in due time, he may commence a new action within a year after such failure, in spite of the fact that the time originally limited therefor has expired.  It is not to be supposed that defendant intended to, or that it could, defeat the purpose of this last statute by voluntarily appearing in an action imperfectly commenced, and then insisting that the action in which it appeared had never been commenced at all.

[2, 3] 2. *The Parties Plaintiff.*  Each of three actions was brought by an administrator to recover for the death of his intestate.  The petitions, as amended, specified the surviving relatives, and alleged that they had been injured by the deaths in the amounts of the ad damnum clauses.  One of the petitions expressly stated that the action was

brought for the benefit of this survivor, and the other two are open to no other implication. The answers raised no question of the right of the administrators to maintain these actions; but after the trials had reached the point where the plaintiffs' opening argument to the jury had been made, the defendant first suggested that, by Pennsylvania law, the right of action for wrongful death vested in the surviving, dependent relative, and not in the personal representative, whereupon the court permitted, in each action, a substitution of plaintiffs, so as to make the surviving relative the plaintiff of record, and the cases proceeded to judgment in that form. This is said to have been error both because the action became a different one and because the new action was, at that date, barred by time; and to support the claim of error, defendant relies upon Railway v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983.

In that case, as is pointed out in Railway v. Wulf, 226 U. S. 570, 577, 33 Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134, the amendment was not merely a change in the nominal party, but presented a different theory of the right to recover and a different state of facts; and it was for these reasons that the amendment was not permitted. The amendment in the present cases made no change, except to substitute the real parties in interest for the plaintiff who had supposed he was their trustee. It is true that the case was submitted to the jury and a recovery was permitted upon a theory of negligence not disclosed in the original petition; but no more was it disclosed by the amended petition after the substitution of parties; and since defendant made no objection, on the ground of variance, to the evidence as it came in, or to the action of the court in submitting this theory, it waived any objection resting upon that variance.

So far as concerns the propriety of the amendment, we cannot distinguish these present cases from the Wulf Case. One is the converse of the other. There the beneficiary brought suit as plaintiff, and, when it was learned that the right of action there involved had vested in the personal representative, a substitution was permitted. We cannot see that it is of any importance that the beneficiary and the personal representative happened to be the same person. We find no error in the action of the court below in this respect. See, also, Seaboard Ry. v. Koennecke, 239 U. S. 352, 36 Sup. Ct. 126, 60 L. Ed. ——. We assume, as the parties do, but without deciding, that the identity of the plaintiff in such an action is fixed by the Pennsylvania, not by the Ohio, statute, and that the amendments named the proper parties.

[4] 3. *The Merits.* The court held that killed or injured persons who knew that the powder was in the closet were guilty of contributory negligence and recovery was barred. This holding was fatal to other actions, but in these four cases, it was found that such knowledge did not exist. There was evidence tending to support this finding, and so the question of contributory negligence is not here. Upon the subject of negligence or nuisance, whichever it may be called, it is clear enough—perhaps it is hardly disputed—that the proofs tended to show that it was beyond the limits of prudence to maintain so large a store of powder as some evidence indicated this was, in a place like

this closet and at a time when the adjoining room was to be occupied by a miners' Christmas eve party, involving drinking and smoking, and when some of those naturally to be expected to be present did not know the powder was there and when no warning was given for the benefit of these uninformed persons. The really vital question was whether this negligence was properly imputable to defendant, the owner and landlord of the premises or could be imputed only to the tenants or subtenants in the house or their invited guests. All the injured persons were of these classes. We see no object in detailing the evidence upon the issue. On one side, it was claimed that Mrs. Wilding and her husband were lessees under a formal written lease; that the company, as lessor, had no control over the premises and that the powder was solely in the control of the miners to whom it had been furnished from time to time; and that the miners boarding in the house kept this store of powder there for their own convenience, so that they might more easily get their daily supply. On the other hand, it was said that the written lease was a mere form; that the boarding house was for the company benefit and was completely under its control, so far as it cared to exercise control; that the powder in the closet belonged to the company, and was replenished and kept there by the company for its convenience; and that, on this particular occasion, the party had been assembled in this place with the assistance of the company's representative and as a part of its policy of properly providing for the needs of its workmen. It is not now important where the weight of the evidence was on this main issue. There was more than a scintilla of evidence in plaintiffs' favor on each link in this chain, so as to require its submission to the jury. The weakest link is with reference to the company's knowledge that this quantity of powder was in this place at this time, but there is testimony that it was shown to the company's agent just before the explosion, and he said it was all right. If this is true, a warning from him to those present would have prevented liability, if not injury. It was made clear by the charge that the jury must find for plaintiffs or for defendant, according as they found this general state of facts one way or the other, and we think defendant was not entitled to an instructed verdict. The extended discussion in the briefs as to the liability of a landlord, where a dangerous nuisance is maintained on the premises by the tenant, becomes immaterial. Each case was submitted to the jury and each verdict stands upon the theory that the ordinary relation of landlord and tenant did not exist, but that the premises were, in fact, in the possession and control of the landlord, and that the dangerous condition was maintained by it.

[5, 6] 4. *Specific Errors in the Charge.* Several complaints are made, but we think they are, with one exception, sufficiently covered by what has been said, or else that they do not require separate mention. The written lease from defendant to Mrs. Wilding, defendant regarded as important, and it was presented by defendant as superseding the earlier and rather loose arrangement under which there was more reason for saying that defendant had actual control. Though of course plaintiffs were not bound by the terms of the lease as the parties to it were, as against dispute by parol, yet if this lease in truth

represented the contract and the whole of it between the company and Mrs. Wilding, and if the relations which the lease seemed to create were the ones actually thereafter existing, plaintiffs were not entitled to recover upon the theory upon which they did recover. Defendants were entitled to a charge making this clear to the jury, and if such a charge had been requested, it would have been error to have passed the matter by as the court did, with no reference whatever to the lease or to that specific theory of defense, and with only the general statement that the jury must decide which party had the actual control and management of the premises and of the powder. Stoll v. Loving (C. C. A. 6th Cir.) 120 Fed. 805, 57 C. C. A. 173. However, no such request was made, and we have repeatedly held that a judgment will not be reversed because the court did not submit specifically some theory of recovery or defense which he was not asked to do. Erie Co. v. Schomer (C. C. A. 6th Cir.) 171 Fed. 798, 802, 96 C. C. A. 458. An exception was taken in general terms to the failure of the court to charge upon the subject of the effect of the lease, but such an exception cannot supply the place of the necessary preliminary request. An exception alone is sufficient to reach an error of commission in the charge, but it may not be as to an error of omission. In such case, it amounts only to the claim that the court should have said something further, but the court is not told what it is that he should have said—is not told even in substance. Many times such an exception will be all that the trial judge thinks necessary to inform him sufficiently, and, in his discretion, he will proceed to cover the ground omitted; but the close of the trial, when a jury is about to retire, is not the proper time to bring to the attention of the trial judge for the first time, and merely by exception, a matter, the proper disposition of which requires study and careful formulation in connection with what has been said. Only in a clear case of prejudice—if then—could we feel justified in reversing the judgment for a reason based only on such an exception; and this is not such a case. See Young v. Corrigan (C. C. A. 6th Cir.) 210 Fed. 442, and cases cited on page 443, 127 C. C. A. 174.

The judgment in each case will be affirmed.