## WORLD PUB. CO. v. DAVIS, Agent. TULSA PAPER CO. v. SAME. DEMOCRAT PRINTING CO. v. SAME.

(District Court, N. D. Oklahoma. April 23, 1926.)

Nos. 56, 58.

1. Commerce ⊕═88—Reparation award, affirming conclusion in prior cases as to rate, held adequate finding of maximum rate, notwithstanding recital rates were "relatively unreasonable" (Act to Regulate Commerce, §§ 1, 3 [Comp. St. §§ 8563, 8565]; Federal Control Act, § 10 [Comp. St. § 3115¾j]).

Reparation award of Interstate Commerce Commission, reciting that conclusions in other cases as to maximum ton-mile rates must be affirmed, *held* adequate finding of maximum rate, as required by Act to Regulate Commerce, § 1 (Comp. St. § 8563), and not a finding of prejudice or perference under section 3 (Comp. St. § 8565), which Commission had no authority to make, under Federal Control Act, § 10 (Comp. St. § 3115¾j), notwithstanding recital that rates were "relatively unreasonable."

2. Commerce ⊕═88—Director General, having certified statements containing reparation claims as to shipments after hearing, could not claim award was invalid as to them.

Where Director General made no objection to claims for reparation respecting shipments made after hearing before Interstate Commerce Commission, contained in statements made under Rules of Practice, rule 5, but certified statement as correct, he could not claim Commission's award was void as to such shipments.

3. Carriers ⊕═200—Carriers are jointly and severally liable for excessive joint through rates.

Charging of unreasonable through rate is joint tort, and carriers participating therein are jointly and severally liable for damages sustained, though other carriers also liable were not made parties to proceeding.

4. Commerce ⊕═88—Reparation award held not void because point of origin of shipment was not named in complaint nor Commission's report, in view of statement made under practice rule (Rules of Practice, rule 5).

Objection that one of places of origin involved was not named in complaint, nor in Interstate Commerce Commission's reports, and that reparation order was therefore void as to it, could not be sustained, where shipments from such point were set forth in statement made under Rules of Practice, rule 5.

**5. Railroads** 5½, New, vol. 6A Key-No. Series—Claim for reparation on joint through rates is enforceable against Director General of Railroads (Federal Control Act [Comp. St. §§ 3115¾a–3115¾p]).

Under Federal Control Act (Comp. St. §§ 3115¾a–3115¾p), claim for reparation is enforceable against Director General of Railroads, as against contention that he is branch of government and not liable, and that he cannot advance funds due from another.

**6. Railroads** 5½, New, vol. 6A Key-No. Series—Director General of Railroads is liable for interest allowed on reparation award (Federal Control Act [Comp. St. §§ 3115¾a–3115¾p]).

Under Federal Control Act (Comp. St. §§ 3115¾a–3115¾p), interest allowed on reparation award by Interstate Commerce Commission is enforceable against Director General of Railroads.

**7. Limitation of actions** 127(18)—Claim for attorney's fees in action to enforce reparation award is not new cause of action, barred by limitation.

Claim for attorney's fees, first set up in amendment to petition in action to enforce reparation award of Interstate Commerce Commission, does not set up new cause of action, barred by limitation.

**8. Railroads** 5½, New, vol. 6A Key-No. Series—Director General of Railroad liable for costs in reparation proceeding (Interstate Commerce Act, § 16 [Comp. St. § 8584]).

In action to enforce reparation award, Director General of Railroads may be held liable for attorney's fees and costs, under Interstate Commerce Act, § 16 (Comp. St. § 8584).

**9. Commerce** 97—Costs and attorney's fees should not be taxed in action to enforce reparation award until judgment becomes final (Interstate Commerce Act, § 16 [Comp. St. § 8584]).

Taxation of costs and reasonable attorney's fees under Interstate Commerce Act, § 16 (Comp. St. § 8584), in favor of plaintiff, suing to enforce reparation award of Interstate Commerce Commission, should not be made until judgment becomes final.

**10. Appearance** 9(4)—Director General, by filing answers in actions to enforce reparation awards made general appearance.

Director General of Railroads, by filing answers and other pleadings in actions to enforce reparation awards of Interstate Commerce Commission, made general appearance, and cases were properly before court, notwithstanding defective service of process on him.

**11. Appearance** 3—General appearance of Director General of Railroads in actions to enforce reparation awards held to constitute general appearance as to all carriers involved.

General appearance of Director General of Railroads in actions to enforce reparation awards of Interstate Commerce Commission *held* to constitute general appearance as to all carriers involved.

At Law. Separate actions by the World Publishing Company by the Tulsa Paper Company, and by the Democrat Printing Company against James C. Davis, Agent. Judgments for plaintiffs.

Karl Knox Gartner, of Washington, D. C., and Shea & Shea, of Tulsa, Okl., for plaintiffs.

A. A. McLaughlin, of Des Moines, Iowa, Stuart, Sharp & Cruce, of Oklahoma City, Okl., E. J. Doerner, of Tulsa, Okl., and Alex M. Bull, of Washington, D. C., for defendant.

KENNAMER, District Judge. These are suits brought to enforce an order of the Interstate Commerce Commission, based upon awards of reparation. On October 4, 1918, the plaintiffs herein filed a petition with the Interstate Commerce Commission (herein called the Commission), attacking freight rates on news print, wrapping paper, and toilet paper from Merrill and Park Falls, Wis., International Falls, Minn., and Nekoosha and Green Bay, Wis., to Tulsa, Okl. A hearing was had before the Commission on January 30, 1919, which, on June 16, 1919, rendered its report, finding the rates assailed to be unjust and unreasonable, and that the complainants had been damaged to the extent of the difference between the charges paid and those which would have accrued at the rates found just and reasonable, and that they were entitled to reparation. On November 8, 1920, the Commission entered an order requiring the Director General of Railroads, as Agent, to pay to the Tulsa Paper Company $1,335.44, with interest from October 1, 1918; to the Democrat Printing Company $4,444.08, with interest from September 10, 1918; and to the World Publishing Company $5,876.89, with interest from November 25, 1918. Other carrier corporations were ordered to pay certain amounts, but that is not involved in this action. The Director General did not comply with the order, and petitions were filed in the district court of Tulsa county, state of Oklahoma, to enforce it. These cases were subsequently removed to the United States District Court, where they were tried to the court; both parties having waived a jury.

The report of the Commission, styled World Publishing Co. et al. v. Director General et al., reported in 53 Interst. Com. Com'n. R. 491, among other things, states: "* * * We find that the rates to Tulsa assailed were, are, and for the future will be relatively unjust and unreasonable to the extent that they exceeded, exceed, and may ex-

ceed on a ton-mile basis the rates on like commodities contemporaneously maintained to Joplin [Mo.]." A finding was made to the effect that the complainants had made shipments and paid freight charges thereon at the rates found relatively unjust and unreasonable, and found them entitled to reparation. In accordance with the suggestions contained in the report, statements showing details of the shipments in accordance with rule V of the Rules of Practice were prepared by the complainants, and were in no manner objected or excepted to by the defendant, the Director General. Upon these statements, awards were made by the Commission.

[1] It is the contention of the Director General that the order of the Commission is void, because there was a finding that the rates were only relatively unreasonable, which it is insisted is equivalent to a finding of prejudice or preference under section 3 of the Act to Regulate Commerce (Comp. St. § 8565), and is not a finding of unreasonableness under section 1 (Comp. St. § 8563). In the course of its decision in the instant case the Commission states: "In the absence of proof to the contrary, the conclusions reached in the Muskogee Cases, supra, must be affirmed as sound, and at least equal ton-mile rates should be the maximum at Tulsa." The Commission's decision shows that in prior proceedings of the Commission, in the cases of Phœnix Printing Co. v. M., K. & T. Railway Co., 31 Interst. Com. Com'n R. 289, and Adleta Paper Co. v. C. & N. W. Railway Co., 31 Interst. Com. Com'n R. 347, called by the Commission the "Muskogee Cases," the Commission had prescribed rates on news print and wrapping paper from Northern mill points to Muskogee, basing them on the per ton mile rate to Joplin.

I am of the opinion that the Commission made an adequate finding of a maximum rate, as required by section 1 of the Act to Regulate Commerce. Under section 10 of the Federal Control Act (40 Statutes at Large, 451 [Comp. St. § 3115¾j]), the jurisdiction of the Commission with respect to rates charged by the Director General, during federal control, was limited to the "justness" and "reasonableness" of the rates. It thus appears that the Commission had no authority to make an "unjust discrimination" or "undue prejudice" finding against the Director General. The fact that no proof of damages was required by the Commission indicates to some extent that their finding was one of unreasonableness rather than one of discrimination or prejudice. The Com-

mission is expert in the matters coming before it for determination. It is not vested with power to enforce awards of reparation. Furthermore it will be assumed that the Commission acts on the theory that proof of damages is required for a finding of unjust discrimination or undue prejudice; it is also cognizant of the fact that questioned awards must bear the scrutiny of the courts. Therefore, in view of the report of the Commission finding the maximum rate for Tulsa to be the per ton mile rate to Joplin and Muskogee on the commodities involved, it cannot be presumed, merely from the use of the word "relatively" in its report, that the Commission intended to make a finding which it had no authority under the law to make.

That a maximum rate for Tulsa on the commodities involved was announced by the Commission bears of little doubt. Instead of specific figures, the findings prescribed a formula. In the "Muskogee Cases" rates were prescribed, based upon the per mile rate to Joplin, and in the instant case the basis of the rate prescribed is the rate established to Muskogee and Joplin; it is capable of exact determination, just as if set out in figures in the record. The rule 5 statements were based upon the formula prescribed, and the Director General certified to the correctness of the calculations.

[2] Defendant insists that, even if the order of the Commission is not void in its entirety, it is void as to all shipments which moved after the date of the hearing before the Commission. I cannot agree with this contention, in view of the fact that the rule 5 statement was certified by the Director General as correct. This statement contained shipments moving after the date of the hearing, which I am informed is the practice of the Commission. Such is generally accompanied by appropriate affidavits that complainants had paid and borne the charges. Carriers are afforded an opportunity to object to proof in affidavit form, and if there is objection a further hearing upon the point is necessary. This proceeding is used to eliminate the necessity of additional hearings. A new rate, when prescribed, is of course prescribed to take effect at a future date, to give time for publication of necessary tariffs. If the complainant must accept reparation only to the date of the hearing, he must attend further hearings to cover shipments moving before the new rates go into effect. The defendant in this case has had his opportunity to object to the manner of proof, but did not do so, and the Commission ordered payment of reparation. Since no objection was raised

by the defendant, I am of the opinion that the order of the Commission was based upon sufficient evidence, and that the complainants are entitled to reparation according to the terms and tenor of the order of the Commission.

[3, 4] Defendant contends that two roads, to wit, the Chicago, St. Paul, Minneapolis & Omaha Railroad and the International Bridge & Terminal Railroad, were not named in the petition filed with the Commission, and that Ft. Francis, Ont., was not named in the complaint nor in the Commission's report as one of the points of origin involved, and for these reasons the order of the Commission must be declared void as to them. It was stipulated in this case that the rates charged on all the shipments were joint through rates, and the charging of an unreasonable joint through rate is a joint tort. It has been held that the carriers participating in joint rates which are unreasonable and excessive are jointly and severally liable to the persons or person injured by such violation of the act for the full amount of damages sustained in consequence of such violation. Central R. R. Co. v. United States, 257 U. S. 247, 259, 42 S. Ct. 80, 66 L. Ed. 217. That liability is enforceable against the defendant in this case, though other parties to such rates, which were joint through rates, were also liable and were not proceeded against, is established, I think, by the case of Louisville & N. R. Co. v. Sloss-Sheffield S. & I. Co. (C. C. A.) 295 F. 53, 59. However, Ft. Francis, Ont., as a point of origin, was involved in the proceeding before the Commission, as the shipments from that point are set forth on the rule 5 statement. No doubt these statements were supported by freight bills which accompanied them, and the Director General made no objections to the statements. He will not be heard to object to them at this time.

[5] The Director General insists that, even if the rates were joint rates, the order of the Commission is void, for the reasons that the Director General, as a branch of the United States government, cannot be held liable for the torts of another, in the absence of specific statutory consent to be sued severally, and further because the Director General is not permitted to advance funds due from another. I cannot accept these contentions as sound. In International Nickel Co. v. Director General, 66 Interst. Com. Com'n R. 627, shipments moved from a point in Canada to points in New Jersey, via through routes to which joint through rates applied. The full amount of reparation was awarded against the Director General, although part of the unlawful through rate had been charged by lines in Canada over which the Commission had no jurisdiction. The same judgment was made in American Splint Corporation v. Director General, 74 Interst. Com. Com'n R. 19, and Keith Co. v. Director General, 83 Interst. Com. Com'n R. 167.

It seems well settled that a claim for reparation on a joint through rate is several as well as joint, and the full amount of the damage sustained, where the joint rate is found unlawful, can be recovered against any one of the carriers, which were parties to the joint through rate. Black Horse Tobacco Co. v. I. C. R. R. Co., 17 Interst. Com. Com'n R. 588–590; Webster Grocery Co. v. C. & N. W. Ry. Co., 21 Interst. Com. Com'n R. 20, 21; Orgill Brothers & Co. v. N. C. & St. L. Railway et al., 39 Interst. Com. Com'n R. 513, 514; Sloss-Sheffield Steel & Iron Co. v. L. & N. R. R. Co., 60 Interst. Com. Com'n R. 595, 598; International Nickel Co. v. Director General, 66 Interst. Com. Com'n R. 627, 628. In the International Nickel Co. Case, supra, it is said: "The charging of an unreasonable rate is a tort. Southern Pac. Co. v. Darnell-Taenzer Co., 245 U. S. 531, 534 [38 S. Ct. 186, 62 L. Ed. 451]. And the parties to such a rate are jointly and severally liable for any resulting damage. Nicola, Stone & Myers Co. v. L. & N. Ry. Co., 14 Interst. Com. Com'n R. 199; Atlantic & Pacific Railroad Co. v. Laird, 164 U. S. 393, 399, 17 S. Ct. 120, 41 L. Ed. 485]." It seems that claims arising under the circumstances presented in this case are not to be considered as ordinary claims against the United States, but, following the spirit of the Federal Control Act (Comp. St. §§ 3115¾a–3115¾p), it seems to follow that such claims are enforceable against the Railroad Administration. In view of this construction, the liability herein imposed is against the Director General, and, since it is his liability, it cannot be said that he is advancing funds on behalf of any one.

[6] It is contended by the Director General that he is not liable for interest in these cases, because he is a branch of the United States government. This proposition has been concluded by the United States Supreme Court in Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087. To the same effect, see Davis v. Prairie Pipe Line Co. (C. C. A.) 298 F. 393, and Empire Refining Co. v. Davis (D. C.) 6 F.(2d) 305. Clearly the award of reparation, with interest, is enforceable.

[7, 8] It is next insisted that this defendant,

the Director General, a branch of the United States government, is not liable for attorney's fees and costs. It is also urged that, since the claim for attorney's fees was set up in an amendment to the petition, it is barred by the statute of limitations. I am of the opinion that no new cause of action was set up in the claim for attorney's fees; it is part of the original cause of action, and only an enlarging of the prayer of the petition, so that the relief to which the complainants are entitled may be granted. The identity of the cause of action is not affected by the claim for attorney's fees, and the statute of limitations is not a bar to such recovery. As heretofore held by this court in Empire Refining Co. v. Davis, 6 F.(2d) 305, 308, the Director General, in an action upon an award of reparation, may be liable for attorney's fees and costs. As therein stated, section 16 of the Interstate Commerce Act (Comp. St. § 8584), which provides for the taxing of costs and reasonable attorney's fees as a part thereof in case the petitioner prevails in such actions, is not avoided by the Federal Control Act.

[9] In view of the Missouri Pacific R. R. Co. v. Ault Case, supra, wherein it was held that the government was to operate the carriers, by virtue of the Federal Control Act, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers, it seems to follow that the complainants are entitled to costs and reasonable attorney's fees, just as if the action had been brought against the carrier prior to federal control. See Davis v. Parrington and Davis v. Portland Seed Co. (C. C. A.) both reported in 281 F. 10. The actual taxing of attorney's fees should not be made until the judgment becomes final, and only upon notice to counsel for defendant.

[10, 11] Finally, it is contended that these cases are not properly before the court because of defective service of process upon the defendant. Motions to quash service of summons were filed in the cases, but they were withdrawn by the defendant and answers filed in each case. There have been other pleadings filed by the defendant, and I am clearly of the opinion that the defendant has made general appearances in each of the cases, and that this final contention is without merit. Some insistence is placed upon the fact that the Director General operated each road as a separate entity, and that the Director General, if he has made a general appearance, is only before the court as Agent, against whom suits may be brought arising out of the control of the St. Louis-San Francisco Railway Company in the World Publishing and Tulsa Paper Case, and is not before the court in the Democrat Printing Case. I cannot accept this contention as sound, because I do not know of any such limitation upon a general appearance. The defendant was before the court by reason of his general appearance, and the general appearance must have been in an action then pending. New Jersey Shipbuilding Co. v. Davis (D. C.) 291 F. 617; Keystone Coal Co. v. Fekete, 232 F. 72, 146 C. C. A. 264.

It is the judgment of the court that a decree be entered for the complainants, enforcing the award of reparation, with interest and costs, to include reasonable attorney's fees, in accordance with the views herein expressed.