## LOPEZ et al. v. UNITED STATES.

### No. 3994.

Circuit Court of Appeals, Fourth Circuit.
April 6, 1936.

W. B. Rouse, of New Bern, N. C. (W. B. R. Guion, of New Bern, N. C., on the brief), for appellants. ·

Armistead L. Boothe, Atty., Department of Justice, of Washington, D. C. (Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and James O. Carr, U. S. Atty., of Wilmington, N. C., on the brief), for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action upon a contract of war risk insurance was dismissed in the District Court upon the ground that it was not brought within the time specified by the World War Veterans' Act of 1924. The case was heard upon the pleadings and the records of the Veterans' Administration, which show when the claim was presented to the Administration and denied by it.

While serving in the United States Army, David Carnegie, the veteran, obtained war risk term insurance in the sum of $10,000 effective as of July 21, 1918, and designated his mother, Annie Eliza Carnegie, as beneficiary therein. The policy was kept in force by the payment of premiums until February 1, 1919. The insured died November 23, 1921. The original complaint was filed in the District Court on February 4, 1932, by Ester C. Lopez and Bryant T. Carnegie as sister and brother, respectively, of the veteran. They claimed that by operation of law they were the beneficiaries and entitled to the proceeds of the insurance, and they alleged that the veteran was discharged from the army on December 19, 1918, and that at the time of his discharge he was permanently and totally disabled. The beneficiary named in the policy died on February 20, 1926, and Ester C. Lopez was appointed administratrix of her estate on September 21, 1932. Bryant T. Carnegie was appointed administrator of the veteran's estate on February 10, 1925. On September 23, 1932, the original complaint in the District Court was amended so that the administratrix of the estate of the beneficiary and the administrator of the estate of the insured were joined as parties

plaintiff. The allegation that the veteran became permanently and totally disabled on or before the date of his discharge was repeated.

A claim for insurance benefits under the policy was first filed by the mother, as beneficiary, with the Veterans' Bureau on January 7, 1924. The claim was denied on May 6, 1924, and on May 26, 1924, the attorney for the plaintiffs in the instant case was notified of such denial. After additional correspondence between the Veterans' Bureau and interested persons, the Central Board of Appeals reviewed the case and in an opinion of December 19, 1924, which was reaffirmed on December 21, 1924, denied the claim.

The claim was again brought to the attention of the Veterans' Administration by letter of February 3, 1931, received on February 5, 1931, from an officer of an American Legion Post at New Bern, N. C., in which it was requested that the case be forwarded to the Central Board of Appeals on the evidence on file. The letter stated that this evidence sufficed to show that the veteran was entitled to a permanent 10 per cent. disability rating for compensation purposes from the time of his discharge to February 12, 1920, and to a permanent total disability rating from February 12, 1920, to his death. The writer obviously desired to bring the case within the provisions of section 305 of the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. § 516, which provides in effect that uncollected compensation may be applied so as to prevent the lapse of war risk insurance; but the basic purpose of the letter was to present a claim for the insurance on behalf of the parties concerned. In reply the correspondent was informed that the matter had been referred to the proper appellate board, and on February 20, 1931, a letter was written to him stating that the Central Board of Appeals had reaffirmed their decisions of 1924 in the absence of any new evidence to warrant a change of findings.

On March 31, 1931, W. B. Rouse, as "attorney for the heirs of David Carnegie, deceased," wrote a letter received by the Veterans' Administration on April 2, 1931, stating that an action on the claim was contemplated and requesting the name of the beneficiary in the certificate, and such further decision as the Bureau might deem wise to make. In response the Administration wrote the attorney that the mat-

ter was one for consideration of the Insurance Claims' Council, and forms were inclosed to be filled out and returned. The forms were filled out by Ester C. Lopez, sister of the veteran, and returned to the Veterans' Administration in a letter from the attorney, who stated that because of the death of the beneficiary named in the policy, the insurance was payable under the distribution laws of North Carolina to the sister and brother of the insured. On October 7, 1931, the Insurance Claims' Council denied the claim that the veteran was permanently and totally disabled at any time during the life of the policy, and notice of this denial was sent to Bryant T. Carnegie and to the attorney in letters of October 16, 1931, wherein it was stated that the claimant might appeal from the adverse decision to the Administrator of Veterans' Affairs by giving written notice within sixty days.

On November 5, 1931, the Administration acknowledged an inquiry of October 26, 1931, relative to the status of the claim from an American Legion official in Washington, D. C., and stated that the claim was denied on October 7, 1931, and that the interested persons had been advised of their right to appeal. The letter also stated that the interest of the Legion in the final decision on the claim was noted, and that it would be advised as soon as the decision had been reviewed by the Administrator of Veterans' Affairs.

On November 25, 1931, the Administration addressed letters to Bryant T. Carnegie and to the attorney stating that they might consider the denial of the Insurance Claims' Council of October 7, 1931, as final for the purpose of instituting suit, and if they accepted the denial as final, the suspension of the statute of limitations provided by section 19 of the World War Veterans' Act of 1924 would cease from and after the date of the letter, plus the number of days usually required for the transmission of regular mail from Washington to New Bern, N. C. It was declared that the letter of October 16, 1931, was amended accordingly.

The limitations prescribed in section 19 of the World War Veterans' Act of 1924, as amended by the Acts of July 3, 1930, 46 Stat. 992, 1016 (38 U.S.C.A. § 445) are as follows:

"In the event of disagreement as to claim * * * under a contract of insurance between the Veterans' Administration and any person or persons claiming thereunder an action on the claim may be brought against the United States * * * in the district court of the United States in and for the district in which such persons or any one of them resides. * * * All persons having or claiming to have an interest in such insurance may be made parties to such suit. * * *

"No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date. * * * Provided further, That this limitation is suspended for the period elapsing between the filing in the Veterans' Administration of the claim sued upon and the denial of said claim by the Administrator of Veterans' Affairs. * * * If suit is seasonably begun and fails for defect in process, or for other reasons not affecting the merits, a new action, if one lies, may be brought within a year though the period of limitations has elapsed. * * *

"The term 'claim,' as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim insurance benefits."

The first point for decision is whether the action filed on February 4, 1932, was too late in view of the provisions of the statute. It is not contended that the claimants may avail themselves of the provision of the statute which permits the institution of suit within six years after the accrual of the right, because both the original and amended complaints allege that permanent and total disability occurred prior to February 1, 1919; but it is claimed that the suit was brought within the limitation period of one year after July 3, 1930, in view of the suspension of the limitation for the period elapsing between the filing in the Bureau of the claim and the denial of the claim by the Administrator of Veterans' Affairs. The effect of the latter provision of the statute is that the running of the period of limitations is suspended for the number of days, prior to and including July 3, 1931, that the claim is pending in the Bureau, and that the claimant is entitled to bring suit within that number of days after the denial of his claim. Tyson v. United States (C.C.

A.) 76 F.(2d) 533; Id., 56 S.Ct. 390, 80 L.Ed. ——; Weaver v. United States (C. C.A.) 72 F.(2d) 20.

The government has waived, for the purposes of the instant suit, any right it might have to argue that the denial by the Central Board of Appeals on December 19, 1924, was a sufficient disagreement to have supported a suit under the terms of the Act of July 3, 1930, as amended by the Joint Resolution of January 28, 1935 (38 U.S.C.A. § 445c); Earwood v. United States, 294 U.S. 695, 55 S.Ct. 511, 79 L. Ed. 1233; and so we confine our attention to the transactions of 1931. The period between February 5 and February 20, 1931, when the inquiry from the representative of the American Legion was pending, 'to the Veterans' Administration should not be taken into account, the government contends, because that inquiry presented a claim under section 305 of the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. § 516, for insurance benefits based on the assertion that the veteran became permanently and totally disabled on or before February 12, 1920, and that his insurance should have been kept alive to that date by a disability rating of 10 per cent. from the date of his discharge to which he was entitled; whereas the pending action is based on the claim that the veteran became so disabled at or before his discharge on December 19, 1918.

The point is at least doubtful, for in both instances the basis of the claim was the right to benefits under the certificate of war risk insurance and the difference between the claims lay in the character of the evidence offered to sustain them. But granting that the contention is sound, it is still necessary to consider the denial of the claim presented to the Administrator in the letter of the claimant's attorney which reached the Bureau on April 2, 1931, 92 days before July 3, 1931. The claimant therefore had 92 days within which to bring suit after this claim was denied, and it becomes necessary to fix the date of denial, for in the words of the statute, the period of suspension is from the "filing in the Bureau of the claim sued upon to the denial of the said claim by the Director."

The Insurance Claims' Council denied the claim presented by the attorney for the claimants on October 7, 1931, and the Administration in a letter of October 16, 1931, notified the attorney of the denial and said that there was a right to appeal

therefrom to the Administrator in 60 days, after which time the decision would be referred to the Administrator for his approval. Clearly this denial was not final; but the government contends that it was subsequently made final by certain administrative regulations issued on November 1, 1931. Section 3201 of these regulations declares that the Insurance Claims' Council is vested with jurisdiction in determining total and permanent disability for the purpose of United States government life insurance and yearly renewable term insurance. Section 3204 provides that where the Insurance Claims' Council finds that permanent and total disability does not exist as alleged, such denial shall be final. However, the veteran or his representative is given the right to appeal to the Administrator, to be exercised within 60 days from the date of receipt of notice of the final action of the Council. Section 3107 provides as follows: "If a decision is rendered by the insurance claims council adverse to the allegation made by the claimant, a letter so advising the claimant will be concurrently prepared and sent to the claimant at his last address of record. Said letter will advise the claimant the date on which the council denied the claim, and that the claimant may consider such denial final for purposes of instituting suit under section 19 of the World War Veterans' Act, 1924, as amended. Said letter should further advise the claimant that if he accepts the denial of the claim by the council as final, the suspension of the statute of limitations provided by section 19 shall cease from and after the date of this letter, plus the number of days usually required by the post office department for the transmission of regular mail from Washington, D. C., to the claimant's last address of record, and that his case folder has been forwarded to the appropriate office or station (giving name and address of office or station) and that any future inquiries should be directed to that office or station. If an appeal is filed the case file together with the appeal will be forwarded by the regional office to the Administrator, through the director of insurance, who shall at the time of forwarding the same indicate his approval or disapproval of the decision of the insurance claims council, from which the appeal is taken."

By these regulations, the Administrator of Veterans' Affairs delegated to the Insurance Claims' Council the power and au-

thority to disallow a claim and create a disagreement, which power and authority had theretofore resided in the Administrator alone. Congress approved this delegation of authority in its joint resolution of January 28, 1935, which resolution was made applicable to all suits then pending (including the instant case) against the United States under section 19 of the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. § 445.

The Regulations of November 1, 1935, do not in terms purport to relate to decisions rendered before their promulgation; and for the obvious purpose of providing for such decisions, the Administrator issued Administration Order No. 32 on November 13, 1931, under the authority contained in section 5 of the World War Veterans' Act, as amended by the Act of July 3, 1930, c. 849, 38 U.S.C.A. § 426, and the authority contained in the Act of July 3, 1930, c. 863, § 1, 38 U.S.C.A. § 11. This order, which is declared to be effective November 1, 1931, provides as follows: "Decisions heretofore rendered by the Insurance Claims' Council denying claims for permanent and total disability benefits for insurance, which have not been reversed on review, and from which no appeals in writing have been taken, or will hereafter be taken, either by the claimants or their duly authorized representatives, within 60 days from the date of receipt of notice denying the claim, are hereby confirmed and ratified, and the denial of such claims by such Council, in the absence of an appeal within the prescribed period, constitutes a disagreement under Section 19 of the World War Veterans' Act of 1924 as amended, as far as the Veterans' Administration is concerned."

It thus appears that the decision of October 7, 1931, was not finally confirmed until November 13, 1931, even if we disregard the terms of the order of that date which seem to postpone final confirmation until 60 days from the date of the receipt by the claimants of notice denying the claim. The provision that the order of November 13, 1931, be effective November 1, 1931, must be disregarded in this connection, because the statutory right of the claimants to suspension of the period of limitation could not be cut down by according to the order of November 13, 1931, a retroactive effect. Additional evidence that the denial of the claim of October 7, 1931, was not considered final by the Administration on November 1, 1931, is found in the letter from the Director of Insurance to the officer of the American Legion of November 5, 1931, wherein reference is made to the right of the claimants to appeal to the Administrator, and a promise was given that as soon as the decision had been reviewed by him, notice would be given.

The claimants therefore had 92 days from and after November 13, 1931, or until February 13, 1932, to bring suit, and the suit instituted on February 4, 1932, was not barred by limitations. The action instituted on that day, however, was brought by the brother and sister of the veteran as individuals, who had no right to recover on the policy of insurance in that capacity. Section 26 of the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. § 451, provides that the amount of yearly renewable term insurance, which had become payable under the statute but has not been paid prior to the death of the person entitled to receive it, may be payable to the personal representatives of such person, unless the amounts payable are $1,000 or less and no legal representative has been appointed; and section 303 of the act, as amended, 38 U.S.C.A. § 514, provides that if the designated beneficiary of such insurance does not survive the insured, or survives the insured and dies prior to receiving all of the installments, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable. Section 300 of the act, as amended, 38 U.S.C.A. § 511, designates the classes of persons which include the parents of the insured to whom the insurance may be made payable. The result of these enactments is that when a liability under a policy is established, but the insurance has not been paid prior to the death of the insured, the installments which would have accumulated from the date of the insured's permanent and total disability to the date of his death should be paid to his estate, while those which would have accumulated from his death to the date of the death of the beneficiary should be paid to the estate of the beneficiary, and the commuted value of the installments remaining should be paid to the estate of the insured. McCullough v. Smith, 293 U.S. 228, 55 S.Ct. 157, 79 L.Ed. 297; Pagel v. Pagel, 291 U. S. 473, 54 S.Ct. 497, 78 L.Ed. 921; Single-

ton v. Cheek, 284 U.S. 493, 52 S.Ct. 257, 76 L.Ed. 419, 81 A.L.R. 923.

In view of these statutes, as interpreted by the Supreme Court of the United States, it is apparent that the brother and sister had no standing as such to bring the suit of February 4, 1932, for they could not recover in their individual names. But they also became parties in their representative capacities by the amendment of September 23, 1932, and as such, they are now entitled to recover, if this amendment may be considered as germane to the original complaint rather than as a new and independent suit. In the original action the plaintiffs claimed to be entitled, by operation of law and as beneficiaries, to the proceeds of the war risk insurance issued to the veteran in the sum of $10,-000; while in the amended complaint they sued for the same insurance both as individuals and as personal representatives, as their interests might appear, setting out their appointment as administrator and administratrix of the respective estates. Bryant Carnegie was the administrator of the insured at the time of the original action, and Ester Lopez, the other plaintiff, was appointed administratrix of the mother before the filing of the amended complaint. If the original suit had been instituted in the name of the personal representatives, it would have enured to the benefit of the individuals in whose name it was actually brought, for they were the persons who would have been entitled to the recovery both as next of kin of the insured and as next of kin of his mother, North Carolina Code 1935, § 137; and if the amount due under the policy had been $1,000 or less, it would have been payable to them without the formality of administration, 38 U.S.C.A. § 451.

We think, therefore, that the complaint of September 23, 1932, may be considered as an amendment of the original complaint and that it may properly be said that the action was instituted on February 4, 1932, prior to the expiration of the period of limitation. While the North Carolina holding is to the contrary (Bennett v. North Carolina R. Co., 159 N.C. 345, 74 S.E. 883), the clear weight of authority supports the rule, that "an amendment changing capacity in which a plaintiff sues does not change the cause of action so as to let in the defense of limitations." See exhaustive note on this subject in 74 A.L.R. pages 1269–1276. And this is the rule applied by the federal courts under R.S. § 954, 28 U.S.C.A. § 777; Missouri, K. & T. R. Co. v. Wulf, 226 U.S. 570, 576, 33 S.Ct. 135, 57 L.Ed. 355; McDonald v. State of Nebraska (C.C.A.) 101 F. 171; Leahy v. Haworth (C.C.A.) 141 F. 850, 4 L.R.A.(N.S.) 657; Reardon v. Balaklala Consol. Copper Co. (C.C.) 193 F. 189, affirmed (C.C.A.) 220 F. 584; Quaker City Cab Co. v. Fixter (C.C.A.) 4 F.(2d) 327; Weldon v. United States (C.C.A.) 65 F. (2d) 748; Keystone Coal & Coke Co. v. Fekete (C.C.A.) 232 F. 72, 73; Bixler v. Pennsylvania R. Co. (D.C.) 201 F. 553.

In Missouri, Kansas & Texas Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L. Ed. 355, it was contended that an action under the Federal Employers' Liability Act could not be maintained because the plaintiff sued in her individual capacity, whereas the act required the action to be brought in the name of the personal representatives of the deceased. In that case also the plaintiff filed an amended petition in which, for the first time, she set up a right to sue as administratrix, but it was argued that such an amendment could not lawfully be allowed so as to relate back to the commencement of the action, inasmuch as the cause of action was barred by limitation before the amendment was made. The court held, however, that the amendment did not modify or enlarge the facts upon which the action was based, but merely indicated the capacity in which the plaintiff was to prosecute the action; that the amendment was clearly within the terms of R.S. § 954, and since it was a change in form rather than in substance, it was not equivalent to the institution of a new action but related back to the beginning of the suit.

In McDonald v. State of Nebraska (C. C.A.) 101 F. 171, 178, in which the state of Nebraska was made a party to a suit erroneously instituted in the name of the treasurer of the state at a time when the cause of action was barred by limitation if the amendment amounted to the institution of a new action, Judge Caldwell said: "A defendant has an undoubted right to insist that the person entitled to recover on a cause of action set forth in a petition shall be brought on the record as the plaintiff in the action, to the end that he shall not be compelled to respond twice to the same demand; and that the one suit shall bar all others for the same cause of action. But it has come to be the

settled law that where, either by mistake of law or fact, a suit is brought in the name of a wrong party, the real party in interest, entitled to sue upon the cause of action declared on, may be substituted as plaintiff, and the defendant derives no benefit whatever from such mistake; but the substitution of the name of the proper plaintiff has relation to the commencement of the suit, and the same legal effect as if the suit had been originally commenced in the name of the proper plaintiff."

The action, therefore, should be dismissed as to the individual plaintiffs, but proceeded with as to the personal representatives of the two estates. The judgment of the District Court must therefore be reversed and the case remanded for further proceedings.

Reversed and remanded.