**Jimmy P. DAVIS, as Executor of the Estate of Dallas D. Hardy, Jr., Deceased, Appellant,**

v.

**PIPER AIRCRAFT CORPORATION, Appellee.**

No. 77–2478.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1979.

Decided Jan. 2, 1980.

---

608

Albert W. Copeland, Montgomery, Ala. (Hobbs, Copeland, Franco & Screws, P. A., Montgomery, Ala., Harold K. Bennett, Bennett, Kelly & Cagle, P. A., Asheville, N. C., on brief), for appellant.

Larry Leake, Asheville, N. C. (Harry Du-Mont, Uzzell & DuMont, Joel B. Stevenson, McLean, Leake, Talman & Stevenson, Asheville, N. C., on brief), for appellee.

Before WIDENER, HALL and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this wrongful death diversity case plaintiff, as executor by Alabama appointment of an Alabama decedent's estate, timely filed a complaint in the United States District Court for the Western District of North Carolina, then sought leave to amend his complaint to allege his capacity as ancillary administrator by North Carolina appointment made after the statute of limitations had run. The district court denied leave to amend and, on defendant's motion, dismissed the action for plaintiff's lack of capacity under North Carolina law.[1]

---

1. The question of capacity was of course considered in the context of the attempt by amendment to defeat the bar of the statute of limitations. The statute of limitations defense, an affirmative one, Fed.R.Civ.P. 8(c), is not directly involved here. By disallowing the amendment and thereby precluding any technical relation back the court was able to rest decision on the narrow ground of capacity. Unable to amend, the plaintiff's original lack of capacity remained. Though not precluded by dismissal on this ground from commencing a new action

We reverse and remand for further proceedings.

## I.

On October 13, 1974, Dallas D. Hardy, his wife Betty Hardy, and one Toni Sellars died in the crash of a Piper Aircraft on take-off from Ferguson Airport in Swain County, North Carolina. Thereafter personal representatives of the Sellars and Betty Hardy Estates instituted separate wrongful death actions against Dallas Hardy's estate and Piper Aircraft, as co-defendants, in the state courts of Alabama. A judgment was obtained against both defendants in the Sellars case, and the Betty Hardy case resulted in a settlement. Jimmy P. Davis, appointed executor of the Dallas Hardy estate by an Alabama probate court, commenced this wrongful death action on October 7, 1976, five days prior to the running of the applicable North Carolina two-year statute of limitation, N.C.Gen. Stat. § 1-53(4).[2]

Defendant's answer was not filed until some five months later, on March 7, 1977. In this answer defendant moved for dismissal, or, in the alternative, for summary judgment, on grounds that the plaintiff, not having qualified as ancillary administrator of the Hardy estate, lacked the legal capacity to prosecute this North Carolina claim in the federal district courts of North Carolina. Four months later, on July 7, 1977, plaintiff filed a motion to amend[3] his complaint to reflect his capacity as ancillary administrator by virtue of his appointment by a North Carolina court on July 6, 1977.

Based upon consideration of the pleadings and the parties' briefs and arguments, the district court denied plaintiff's motion to amend the complaint, and granted defendant's motion to dismiss.

In an accompanying memorandum the court held that under *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), Fed.R.Civ.P. 15(a), (c) applied to control decision on the motion to amend rather than a contrary state rule which would, categorically, prohibit the allowance of amendments changing a plaintiff's capacity when the result would be to cure by relation back a lack of capacity that existed when an applicable statute of limitations had run. Applying Federal Rule 15 the court however determined in its discretion that amendment with relation back effect should not be allowed under the circumstances. Defendant's motion to dismiss was thereupon granted. Though we agree with the district court that federal rules of procedure, including Rule 15(c), control decision here, we conclude that in denying leave to amend under the federal rules the district court abused its discretion, and for this reason we reverse and remand.

## II.

North Carolina law determines the capacity of a party to bring a diversity action for wrongful death under state law in the federal courts of North Carolina. Fed.R.Civ.P. 17(b); *see Fennell v. Monongahela Power Co.*, 350 F.2d 867 (4th Cir. 1965). The right of action for wrongful

in the proper capacity, plaintiff would of course in that action encounter the defense directly, and is therefore practically precluded by it.

2. Though the original one-year limitation period in North Carolina's wrongful death statute was construed to be one integral to the cause of action, the present two-year limitation period is an "ordinary statute of limitation", *Stamey v. Rutherfordton Elec. Memb. Corp.*, 249 N.C. 90, 105 S.E.2d 282 (1958), that bars the remedy and not the right.

3. Technically this was more properly an attempt to file a supplemental pleading under Fed.R.Civ.P. 15(d) than an amended pleading under Fed.R.Civ.P. 15(a) because the new mat-

ter occurred after rather than before the original complaint was filed. For relation back purposes, the technical distinction between the two is not of critical importance, and is frequently simply disregarded by courts, *e. g. Rowe v. United States Fidelity & Guar. Co.*, 421 F.2d 937 (4th Cir. 1970). So long as the test of Fed.R.Civ.P. 15(c) is met, a supplemental pleading should ordinarily be given the same relation back effect as an amended pleading. *See generally* 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1508. On that basis, our analysis will treat Fed.R. 15(c) as applying to the supplemental pleading actually attempted here. See note 8, *infra*.

death is purely statutory in North Carolina, *Graves v. Welborn,* 260 N.C. 688, 133 S.E.2d 761 (1963), and may be brought only by "the personal representative or collector of the decedent," N.C.Gen.Stat. § 28A–18–2, in his representative capacity, *id.* § 28A–18–3. A foreign executor or administrator lacks capacity under North Carolina law to prosecute or defend an action in his representative capacity without first having qualified in North Carolina as ancillary administrator. *See Cannon v. Cannon,* 228 N.C. 211, 45 S.E.2d 34 (1947); N.C.Gen.Stat. § 28A–26–3. Since plaintiff had not obtained appointment as ancillary administrator at the time the action was commenced on October 7, 1976, nor when the applicable statute of limitations ran on October 13, 1976, but only when he received appointment as ancillary administrator on July 6, 1977, his capacity to maintain this action dates only from the last date, unless by an amendment relating back to the date of the action's commencement that lack of timely capacity may be cured. This appeal therefore presents two issues: whether applicable law permits such an amendment under any circumstances; and, if so, whether it should have been allowed under the circumstances of this case. Resolution of the first issue requires determining whether state or federal law controls the allowance and relation

back of the amendment sought here. Defendant contends as an alternative basis for affirming the judgment that, contrary to the district court's reasoning, North Carolina law should control, and that it categorically precludes allowance of the amendment. This is of course a classic *Erie* choice of law problem and we address it first.

While the matter may not be entirely free of doubt, for purpose of this decision it may be considered that North Carolina law would prevent allowance of the amendment sought here.[4] Building on the general principle developed under state code practice that amendments introducing "entirely new causes of action" should not be deemed to relate back, a line of North Carolina cases has considered amendments reflecting legal capacity acquired after filing of an original pleading to fall in that category, hence to preclude their allowance when this would defeat the limitations bar. *See, e. g., Graves v. Welborn,* 260 N.C. 688, 133 S.E.2d 761 (1963); *Johnson v. Wachovia Bank & Trust Co.,* 22 N.C.App. 8, 205 S.E.2d 353 (1974).

On the other hand, the longstanding weight of federal authority would give relation back effect to such an amendment. This federal view which developed prior to the advent of the Federal Rules of Civil

---

4. The last pronouncement on the point by the Supreme Court of North Carolina was apparently that in *Graves v. Welborn,* 260 N.C. 688, 133 S.E.2d 761 (1963) where the Court recognized the rule's continued vitality, but held it not applicable on the facts before it, which indicated that the plaintiff had attempted qualification as personal representative prior to commencement of the action but failed only by technical inadvertence, thus necessitating a subsequent act of qualification. The opinion, permitting relation back on these facts, may fairly be read as one chafing against the technical rigidities of the rule and seizing the opportunity to find an exception on a basis that bore no apparent relation to any discernible substantive interest of the state in the timeliness of qualification. In 1970, North Carolina adopted general counterparts to the federal rules of civil procedure, including a rule 15(c) that substantially paralleled the federal rule. Thereafter the United States District Court for the Eastern District of North Carolina, finding relation back in a comparable situation, suggested that under North Carolina's federal rule counterparts, the

old code authorities denying relation back were likely no longer controlling in North Carolina law. *McNamara v. Kerr-McGee Chem. Corp.,* 328 F.Supp. 1058 (E.D.N.C.1971). Nevertheless, subsequent decisions of North Carolina's intermediate Court of Appeals have continued, without reexamination in light of the new rules of procedure, to apply the pre-rule code authorities. *Sims v. Rea Constr. Co.,* 25 N.C.App. 472, 213 S.E.2d 398 (1975); *Johnson v. Wachovia Bank & Trust Co.,* 22 N.C.App. 8, 205 S.E.2d 353 (1974). These last decisions thus remain the most authoritative recent pronouncements by North Carolina appellate courts. To decide that North Carolina's highest court would now construe the state rule to operate consistently with the federal would thus fly in the face of these decisions. Furthermore, there are differences in the state rule 15(c) that could be considered critical on the question of continued conflict. All things considered, we are not disposed to avoid the conflict by undertaking so questionable a venture in assessing the likely present attitude of the state's highest court.

Procedure, *e. g., Missouri, Kansas & Texas Railway v. Wulf*, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355 (1913); *United States v. Powell*, 93 F.2d 788 (4th Cir. 1938); *Lopez v. United States*, 82 F.2d 982 (4th Cir. 1936) (noting conflict with North Carolina rule), is now considered subsumed within Fed.R. Civ.P. 15(c). *See, e. g., Russell v. New Amsterdam Casualty Co.*, 303 F.2d 674 (8th Cir. 1962). *See also Levinson v. Deupree*, 345 U.S. 648, 652, 73 S.Ct. 914, 97 L.Ed. 1319 (1953).

We thus come to the question whether the state or federal rule shall be applied in the face of their conflict. On this, defendant contends that the guide is to be found in the outcome determinative test of *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) as given specific application in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949),[5] and that this compels application of the state rule. To the contrary, plaintiff urges, and the district court agreed, that the answer is definitively given by *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965),[6] and

that this decision compels application of the federal rule.

We think that *Hanna* generally commands application of Fed.R.Civ.P. 15(c) in the face of a contrary state rule, and specifically commands its application here. *See Crowder v. Gordons Transports, Inc.*, 387 F.2d 413 (8th Cir. 1967). *But see McNamara v. Kerr-McGee Chemical Corp.*, 328 F.Supp. 1058 (E.D.N.C.1971) (relying on *Guaranty Trust; Hanna* not considered). While it may be arguable that the North Carolina rule is substantially akin to the Kansas rule in *Ragan*,[7] we think that the distinction used in *Hanna* to avoid clash with *Ragan* is equally available to distinguish the instant case from *Ragan*. Here, as in *Hanna*, the federal rule in question is quite as broad in scope as the conflicting state rule, while that in *Ragan* was not.[8] That being so, *Hanna* commands that unless Rule 15(c) is invalid because violative of the Rules Enabling Act, 28 U.S.C. § 2072 or the Constitution, *see Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), it controls decision without regard to any

---

5. *Ragan* held that a Kansas statute under which the statute of limitations was only tolled by service of process controlled over the implication possible from Fed.R.Civ.P. 3 that tolling occurs upon the commencement of action by filing of complaint.

6. *Hanna* held that for statute of limitations tolling purposes place of abode service under Fed. R.Civ.P. 4(d)(1) controlled over a state statute requiring in hand service.

7. The North Carolina rule is ultimately rested on the view that the plaintiff's lack of capacity at the time of filing the original pleading prevented the statement of a cause of action at that time; that consequently the action was a nullity and provided nothing to which an amended pleading could be deemed to relate. *See, e. g., Hall v. Southern R.R.*, 149 N.C. 108, 110, 62 S.E. 899, 899 (1908). So viewed, North Carolina requires as the tolling act the filing of a complaint stating a good cause of action, just as the Kansas statute in *Ragan* required as the tolling act the service of process. On the *Ragan* analogy, this would overpower Fed.R. Civ.P. 3 which merely specifies the act that commences the action, without also specifying that this act also tolls the statute of limitations. However, that does not end the analysis. *See* note 8 *infra*.

8. That is to say, Federal Rule 15(c) provides an ingredient for the instant case that was not present, nor possible, in the *Ragan* situation: a federal rule which specifically operates to cure by relation back an initial infirmity in the tolling act required by state law.

That the attempt to reconcile *Ragan* with *Hanna* is logically difficult is well known. Some courts have thought it impossible and have held *Ragan* simply overruled by *Hanna, e. g., Newman v. Freeman*, 262 F.Supp. 106 (E.D. Pa.1966). In view of the *Hanna* Court's careful attempts to distinguish *Ragan, Hanna*, 380 U.S. at 469–70, 85 S.Ct. 1136, we are not disposed to solve the problem by disregarding the difficulties posed by *Ragan*.

At this point, other federal rules may also be brought into play as direct displacements of the state rule. It is clear that under federal law the failure to have stated a claim under Fed.R. Civ.P. 8(a)(2) is no impediment to the later allowance of an amendment having relation back effect, as revealed by cases upholding such amendments after dismissal of complaints under Fed.R.Civ.P. 12(b)(6). *See, e. g., United States ex rel. Ross v. Somers Constr. Co.*, 184 F.Supp. 563 (D.Del.1960). *See also* Fed.R. Civ.P. 15(d).

contrary state rule. There has been no suggestion that Rule 15(c) is not valid under the Rules Enabling Act or under the Constitution [9] and we therefore hold it controlling here.

We think the same result would be indicated were it to be considered that Rule 15(c) is not sufficiently broad in scope completely to cover the ground occupied by the state rule. In that situation, faced with "the typical, relatively unguided *Erie* choice," *Hanna*, 380 U.S. at 471, 85 S.Ct. at 1144, *Hanna* teaches that the choice between the two rules should not be made on a talismanic analysis of the outcome determination factor alone, but instead by consideration of the compatibility of the choice with *Erie's* twin aims: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." Id. at 468, 85 S.Ct. at 1142.

Here, application of the federal rule could not encourage forum shopping, since at the time of forum choice the need for invocation of a relation back rule of pleading is simply not in the picture for a claimant. Similarly, a balancing of federal interests in uniformity of application of procedural rules and in the maintenance of a coherent approach to related procedural matters such as the standards for stating claims sufficiently outweighs any discernible state interest in effectively preventing curative appointment of a personal representative after the timely commencement of judicial proceedings. See *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Levinson v. Deupree*, 345 U.S. 648, 652, 73 S.Ct. 914, 97 L.Ed. 1319 (1953). As recognized by the North Carolina Supreme Court in *Graves v. Welborn*, 260 N.C. at 692, 133 S.E.2d at 764 the substantive law of North Carolina readily validates other types of action taken by persons prior to their official qualification when they are subsequently appointed as personal representatives. The interest therefore seems one confined solely to technical procedural concerns in the prosecution of litigation. The state's underlying interest, as reflected in statutes of limitations, in protecting persons against stale claims is adequately protected by the practical notice requirements built into Rule 15(c). The undoubted substantive interest of the state in subjecting representative parties to official oversight in their prosecution of litigation and the administration of any proceeds realized from it would seem completely subserved by their official qualification at early stages of litigation such as that involved here.

Were we facing an *Erie* choice not directly controlled by a specific rule's applicability, we would therefore consider that the federal policies above identified quite significantly outweigh any state interest served by the presumably conflicting state rule, including that of insuring uniformity of outcome in state and federal forums in the prosecution of this state claim. See *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. at 538, 78 S.Ct. 893.

### III.

Having rightly concluded that the federal rules relating to amendment rather than any conflicting state rule controlled decision on the motion to amend, the district court then considered the propriety of allowing the proffered amendment under Fed.R. Civ.P. 15(a), and denied the motion in an exercise of discretion. The reasons were specifically stated: (1) plaintiff, on two separate occasions, failed to assert his claim against defendant in the prior actions in the state courts of Alabama; (2) plaintiff delayed four months after learning of the defect in his complaint before he moved to amend; (3) were the action pending in state court, plaintiff's motion to amend would be denied and the action dismissed; and (4) plaintiff's decedent had been found negligent by a jury in one of the Alabama proceedings, and in the other plaintiff admitted his negligence as evidenced by a consent judgment. Upon consideration of those reasons we conclude that denial of leave to amend on their basis and in the

---

**9.** *See generally* 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1503, at 534.

totality of the circumstances constituted an abuse of discretion.

■ Discretion to deny leave to amend is limited by the principle, embodied in Rule 15(a) that "leave shall be freely given when justice so requires," and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits. *See* Fed.R.Civ.P. 1. A court may not then use its discretion either arbitrarily, or in a way that undermines the basic policy of the rule. Here we think the denial undermined that policy.

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), sets forth the general standard to be employed by federal courts in making a Rule 15(a) determination:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given."

■ Under this standard prejudice resulting to the opponent by a grant of leave to amend is reason sufficient to deny amendment. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Conversely, absence of prejudice, though not alone determinative, will normally warrant *granting* leave to amend. *See Wall v. Chesapeake & Ohio Railway*, 339 F.2d 434 (4th Cir. 1964). Here, no finding of prejudice was made by the trial court, nor could it have been. Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case. In spite of the

absence of any discernible prejudice, the district court, noting that the factors listed in *Foman v. Davis* are not exhaustive, found what it considered to be "other good and sufficient reason[s]" (set forth above) for denying amendment.

■ Only one of the reasons, the delay of four months, falls within the factors specifically mentioned in *Foman*. Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial. *See generally* 6 Wright and Miller, *Federal Practice & Procedure: Civil* § 1488, at 438. We do not think the delay here suffices. In any event, considering the pace already set by the defendant's delay of some five months in filing answer to the original complaint and the necessity for plaintiff's qualification in North Carolina before amendment could be sought, the delay seems not undue aside from prejudice.

■ While *Foman's* enumeration of factors cannot be thought exclusive, they do embody a principle which focuses on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants. *See Howey v. United States*, 481 F.2d 1187, 1190–91 (9th Cir. 1973). The other reasons for denial cited by the trial court do not fall within these concerns. The fact that relation back would not be permitted in state court is not a valid consideration. So to treat it would in effect undercut the basic choice of law decision already made in favor of federal law. The same is true of the stated reason that plaintiff's decedent has been found negligent in the courts of Alabama. Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, *see, e. g., DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968), conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.[10] The fact that plaintiff had

---

**10.** The effect of the Alabama proceedings and judgments on this claim was also raised by

defendant as a defense on the merits. The failure to file a cross-claim was raised as pre-

two opportunities to assert this claim as a cross-claim in the Alabama proceedings has relevance only to the factor of delay, which we have earlier indicated does not suffice, absent prejudice or bad faith, to justify denial of leave to amend.

■ Finally we turn to the relation back question itself. If the district court could rightly have concluded that this amendment, if allowed, would not relate back under Fed.R.Civ.P. 15(c), its futility in face of the limitation bar would be clear and denial might properly have been based upon this factor. The district court could not so conclude, because under the federal rule the amendment would clearly relate back. It obviously meets the test of the rule that it allege matter arising out of the same occurrence as that set forth in the original pleading, thereby insuring that the defendant knew of the action's commencement and of its nature in time to avoid any prejudice to his defense on the merits. *See Tiller v. Atlantic Coast Line Railroad*, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945); 6 Wright & Miller, *Federal Practice & Procedure: Civil* § 1501, at 526–27.

For error in denying leave to amend and dismissing the action, the judgment is reversed and the action remanded for further proceedings. The proferred amendment is allowed, and as allowed relates back in legal effect to the date of commencement of the action. Fed.R.Civ.P. 15(c).

*REVERSED AND REMANDED.*

K. K. HALL, Circuit Judge, dissenting:

I cannot agree with the majority's election to save this state cause of action which is barred in state court. Contrary to the majority's opinion, no technical federal pleading rule is at issue, nor is any federal court procedure at stake. Instead, we must decide which events under North Carolina law can toll its statute of limitations in wrongful death actions.

North Carolina courts have ruled that wrongful death actions brought by nonresident personal representatives are time-barred unless *two* events occur within two years of the alleged wrongful death: (i) qualification of the nonresident as an authorized North Carolina personal representative, and (ii) filing of a complaint to commence the wrongful death action.

The majority holds that, in federal court, only *one* event should occur within two years of the wrongful death. The majority's analysis presumes that a pleading problem is presented and holds that filing of the complaint *alone* can toll the statute in federal court, so long as the plaintiff can become qualified to maintain it anytime during the litigation. It is reasoned that this result is mandated by the Federal Rules of Civil Procedure because they allow pleas of late qualification to relate back to the date the complaint is filed, albeit as a matter of discretion for the district court.

The North Carolina courts have refused to approach the limitations issue posed here by plaintiff's late qualification as a plead-

---

'clusive of the claim, and the Alabama contested judgment as preclusive on the issue of plaintiff's decedent's contributory negligence. The district court rejected these as substantive res judicata defenses, holding that under Alabama law, a cross-claim presenting the wrongful death claim was merely permissive, not mandatory, so that the claim was not precluded in this action. In dealing with the possibility of issue preclusion as to the plaintiff's decedent's contributory negligence in this action, the court looked to North Carolina rather than Alabama law in finding no issue preclusion as between co-defendants who in a prior action did not actually litigate the issue *inter se.* The defendant on this appeal did not seek to challenge this holding on the preclusive effects of the Alabama proceedings as an alternative basis for

affirming the judgment. Consequently we do not address it, beyond observing that the question whether Alabama rather than North Carolina law properly controlled the issue preclusion point was apparently not addressed in the district court. *See Restatement of Judgments* § 68, comment *v* (1942).

When the district court later addressed the effect of the Alabama proceedings on the propriety of allowing amendment, the consideration was not as to technical *res judicata* effect, but simply whether the Alabama results presaged a likely finding against the plaintiff in this action if allowed to proceed. It is this point that we address in text.

ing problem. They turn to the substantive nature of the qualification requirement and adopt it as a separate tolling event. Uniformly, they hold that technically the *plea* of qualification can relate back to the filing date but at that time the action is a nullity since it can commence to toll the statute only after the plaintiff has attempted his qualification as a North Carolina authorized personal representative—whereupon he accrues the statutory right to sue.

In *Graves v. Welborn*, 260 N.C. 688, 133 S.E.2d 761, 767 (1963), North Carolina's highest court held that a wrongful death action was validly "commenced" to toll the statute on the filing date, when the plaintiff had made a bona fide attempt to qualify before she filed her action. Her complaint was filed within the limitations period, but her official qualification occurred beyond it. 133 S.E.2d at 763–64.

The North Carolina Supreme Court discussed at length the fact that plaintiff had substantially complied with the qualification requirement before the complaint was filed. *Id.* at 766. She had applied to the court and obtained an order naming her as the lawful representative. She had performed every act necessary for official appointment other than securing the signature of surety to a bond which, because the estate had no assets, would have been only nominal. The court emphasized that she believed her qualification was effective when suit was filed, and therefore was no "pretender." *Id.* at 767. The plea of her official qualification was allowed to relate back to the filing date because the qualification requirement had been met in substance before that time. This case was decided under the North Carolina common law rules of pleading.

Since *Graves*, North Carolina has adopted the liberal federal rules of pleading and practice, but the substantive qualification requirement has not changed. On facts posing the precise issue here, it has been held that attempts to qualify after the action is filed may be pleaded and allowed to relate back to the filing date, but the action, at that time, is a nullity since to be

valid it can "commence" and toll the statute only after qualification is effective. *Sims v. Rea Construction Company*, 25 N.C.App. 472, 213 S.E.2d 398 (1975); *Johnson v. Wachovia Bank & Trust Co.*, 22 N.C.App. 8, 205 S.E.2d 353 (1974).

The decisions of these intermediate state courts of record are binding on federal courts sitting in diversity jurisdiction. *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

This appeal is controlled by *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), where the Supreme Court construed tolling events for state limitations periods to pose substantive law issues. A Kansas statute of limitations was tolled in state court when the complaint was *served* rather than when it was *filed*. Rules 3 and 4(a) of the Federal Rules of Civil Procedure seemed to conflict because they provided that filing, not service, of the complaint in federal court commenced the action, and thereby tolled statutes of limitations. The Court reasoned that state law created the cause of action, and,

> We cannot give it a longer life in the federal court than it would have had in the state court without adding something to the cause of action. We may not do that consistently with *Erie R.R. Co. v. Tompkins* [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)].

337 U.S. at 533–34, 69 S.Ct. at 1235.

As in *Ragan*, any conflict here with North Carolina law arises from what constitutes a tolling event. The majority assumes that filing is a tolling event if qualification becomes effective any time during the action. A consistent line of state court decisions are contrary. They hold that filing can be a final tolling event only when qualification is effective *before* filing. Where the action is filed without qualifying, the act of qualification becomes the final tolling event.

The majority finds that the rule of *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), controls. There, however,

the Court was confronted with a true procedural problem. As the Court characterized the issue, the problem was the manner in which a federal marshal should serve complaints on defendants. *See id.* at 461, 85 S.Ct. 1136. It held that a Massachusetts requirement for in-hand delivery as a tolling event was not binding on federal courts, since, to give it effect, the way a marshal served process would have to be changed. *Id.* at 469, 85 S.Ct. 1136. The Court reasoned that the manner in which federal courts conduct their day-to-day operations cannot be dictated by a slaving devotion to the peculiarities of state law. Therefore, when the federal rules instruct that some act be performed in a certain way, the federal rules are controlling even if state law is contrary and the outcome of the case is determined by the forum selected. *Id.* at 473, 85 S.Ct. 1136.

*Hanna* made no attempt to overrule *Ragan* because entirely different interests were at stake. *Ragan* stated the general rule that state law definitions of tolling events are binding on federal courts. *Hanna* stated an exception where those definitions dictate a change in the performance of some "housekeeping" function prescribed by Congress in the federal rules. *Hanna v. Plumer*, 380 U.S. at 473, 85 S.Ct. at 1136.

Here, the majority identifies no consequence to federal procedures which may flow from a decision to follow North Carolina's substantive law. On the other hand, the consequence of refusing to accept its definition of tolling events is singular: it changes the outcome of the case, giving life to an action barred in state court.

To meet what it perceives as the broad *Hanna* rule, the majority cites F.R.Civ.Proc. Rule 15(c) as a prescription to ignore the North Carolina qualification requirement. The federal rules hardly instruct on our problem at all.

Rule 15(c) speaks to the amendment of complaints where *defendants* are misnamed but otherwise have notice of the action within a limitations period. As the majority notes, Rule 15(d) is more on point because the fact of qualification has occurred

after suit was filed. Rule 15(d) is silent on whether the relation back provisions of Rule 15(c) should apply to supplemental pleadings. Because supplemental pleadings have an impact on statutes of limitations, state and federal, which is very different from the amendments considered in Rule 15(c), that silence was intentional. 3 Moore's Federal Practice ¶ 15.01[7]. I think the majority's leap to rely on Rule 15(c) is, unfortunately, too grand.

The federal rules instruct on our problem, if at all, in Rule 17(b). This rule reveals that whether a party has the capacity or qualification to sue or be sued poses absolutely no consequence to federal court procedures. It points us to state law, because what is at issue in such matters is substantive policy, not technical pleading requirements. It shows that in federal court, state laws should generally control these matters because they are designed to protect rights and impose responsibilities upon persons whom the states deem capable and responsible to vindicate and bear them.

Like statutes of limitations generally, the North Carolina rule requiring qualification to sue is tied to the purpose of the state's cause of action. Unless, to give it effect, federal courts must change *how* they proceed to hear the state's action, we must follow state law.

Finally, I am surprised that, in its effort to save this cause of action, the majority holds in Part III of the opinion that the district court abused its discretion by refusing to allow the amendment to relate back to the date of filing. Again, I think the majority is wrong.

In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court listed reasons for which the district court could refuse to allow the amendment of a complaint: undue delay, bad faith or dilatory motive of movant, repeated failure to amend previously, undue prejudice to the opposing party, futility of amendment, "etc."

Here, the district court found plaintiff waited to amend his complaint four months after being informed of the qualification

requirement (delay); he failed to assert this claim in his two Alabama actions (dilatory motive); and, his action was time-barred in state court and, probably, was barred by the North Carolina contributory negligence rule, inasmuch as plaintiff's decedent had been found by an Alabama jury to be negligent and plaintiff himself had conceded such negligence by a consent judgment (futility, bad faith, dilatory motive). I think the district court's conclusions speak for themselves.

In short, I think the majority's disregard of state law is striking. The action is time-barred as a matter of substantive law. No federal court procedure is fairly at stake. The Federal Rules of Civil Procedure are noticeably silent on our issue. The problem before us is a bare legal issue posing a classic *Erie* "outcome-determinative" choice. As such, federal precedent mandates we follow state law. Finally, I think in no event should we find the district court abused its discretion in refusing to allow plaintiff to save this cause of action by supplemental pleading. Accordingly, I would affirm the judgment of the district court.

Therefore, I respectfully dissent.