**Jewell L. BURTON and Steven Burton, her husband, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ.A. No. 3:00–0009.**

United States District Court, S.D. West Virginia, at Huntington.

Jan. 23, 2001.

Christopher Hedges, David H. Carriger, Stuart Calwell, Law Offices of Stuart Calwell, Charleston, WV, PLLC, for plaintiffs.

Stephen M. Horn, United States Attorney's Office, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

STAKER, Senior District Judge.

Pending before the Court is the government's motion to amend its answer. For the reasons set forth below, the Court **GRANTS** the motion.

### I

On January 5, 2000, the plaintiffs, Jewell Burton and Steven Burton, filed a complaint against the defendant, the United States of America. The complaint alleges that Janice B. Huckaby, M.D.,[1] on July 22, 1996, negligently performed a hysterectomy on Mrs. Burton by failing to remove one of her ovaries and fallopian tubes. The complaint also alleges that Dr. Huckaby subsequently failed to inform Mrs. Burton about the alleged incomplete surgery. (Compl. ¶¶ 6–8.) On March 2, 2000, the government filed its answer, admitting that one of Mrs. Burton's ovaries and fallopian tubes had not been removed, but denying any knowledge of when Dr. Huckaby had become aware of the alleged negligence. (Answer ¶¶ 6–8.) On May 8, 2000, the Court entered a Scheduling Order which set June 21, 2000 as the deadline for amending pleadings. (Scheduling Order ¶ 1.)

On November 3, 2000, Dr. Huckaby was deposed and denied removing only one of Mrs. Burton's ovaries and fallopian tubes. (Huckaby's Dep. at 13.) As a result of Dr. Huckaby's testimony, the government moved to amend its responses to paragraphs 6, 7, and 8 of the complaint on November 9, 2000. Specifically, the government seeks to amend its initial answer as follows: (1) to deny that

---

1. On July 22, 1996, Dr. Huckaby was an employee of Valley Health Systems, Inc., located in Huntington, West Virginia. Valley Health Systems, Inc. is a federally funded clinic covered by the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, and regulated by the United States Department of Health and Human Services. *See* 42 U.S.C. § 233(h). (Compl. ¶ 3.) As the instant suit is against the United States of America, the Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1346(b). (Compl. ¶ 1.)

Dr. Huckaby failed to remove one of Mrs. Burton's ovaries and fallopian tubes, (2) to admit that at some point in time Dr. Huckaby learned that the pathology report indicated that only one ovary and fallopian tube were received for examination, and (3) to state that it lacks sufficient knowledge to form a belief as to when Dr. Huckaby became aware of the pathology report.

## II

■ The government's motion to amend its answer after the scheduling order's deadline for amendment triggers Rules 15(a)[2] and 16(b)[3] of the Federal Rules of Civil Procedure. Neither the United States Supreme Court nor the Fourth Circuit Court of Appeals has dealt with the interplay between the two rules when a motion to amend is made after a scheduling order's deadline to amend has expired.[4] Nevertheless, in *Marcum v. Zimmer*, 163 F.R.D. 250 (S.D.W.Va.1995), Chief Judge Haden announced a standard governing the adjudication of such requests. He concluded that a "two-step analysis" should be applied: "Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)."[5] *Id.* at 254. Applying this standard, the Chief Judge denied the movant's fourth request to modify the scheduling order and amend the complaint because the movant had failed to demonstrate good cause. *Id.* at 255. *Accord Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992) (applying the "two-step analysis," the court denied a motion to amend because it was made four months after the cut-off date for amendment had expired and movant was made aware of his pleading's deficiency prior

---

2. Rule 15(a) provides, in part, as follows:

   A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar the party may so amend in at any time with 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Fed.R.Civ.P. 15(a).

3. Rule 16(b) provides, in pertinent part, as follows:

   [T]he district judge ... shall ... enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings;
   . . . .
   A [scheduling order] shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge. Fed.R.Civ.P. 16(b).

4. The Court notes the unpublished decisions in *In re Lone Star Industries, Inc.*, Nos. 93–1505, 93–1506, 1994 WL 118475, at *11 (4th Cir. Apr. 7, 1994) (refusing to resolve definitively whether a two-step analysis was required because the movant satisfied both rules) (Michael, J.) and *Essential Housing Management, Inc. v. Walker*, No. 97–2150, 1998 WL 559349, at *4 (4th Cir. June 9, 1998) (holding that "the movant must meet the more rigorous Rule 16(b) standard before even reaching the Rule 13(f) prejudice issue" for amending his answer to add a counter- claim) (*per curiam*). However, under 4th Cir. R. 36(c) the use of unpublished opinions is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case. Consequently, the Court cannot rely on the above cases as controlling precedent.

5. The justification for this dual analysis is to protect court orders as well as an opposing party. *Marcum*, 163 F.R.D. at 254 n. 8, 255 n. 9. Moreover, the *Marcum* Court recognized the emerging role of the Scheduling Order:

   With good reason, recent decisions have recognized "a scheduling order [under Rule 16(b)] is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Indeed, a scheduling is the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1 in "secur[ing] the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Specifically, the Advisory Committee for Rule 16 observed that subdivision (b)(1) of the Rule "assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended." Advis. Comm. Notes for 1983 Amend. In regard to subdivision (b)(3), the Committee sought to remedy "the problem of procrastination and delay by attorneys in a context in which scheduling is especially important—discovery." *Id.*

   163 F.R.D. at 253. Finally, the *Marcum* Court concluded that by adopting the "two-step analysis" it would enhance its ability to control its docket. *Id.* at 255.

to the cut-off date for amendment); *Smith v. United Parcel Service, Inc.*, 902 F.Supp. 719, 720 (S.D.W.Va.1995) (Haden, C.J.) (denying the movants' request to add a second count to their complaint because they failed to offer a valid reason for delaying their request for two months after being notified by the court that the complaint was deficient); and, *Holland v. Cardiff Coal Co.*, 991 F.Supp. 508, 516 (S.D.W.Va.1997) (Faber, J.) (applying the test announced in *Marcum*). After carefully reviewing and evaluating Chief Judge Haden's reasoning and the other available authority, this Court holds that it will also employ the "two-step analysis" as outlined in *Marcum* in evaluating the government's motion to amend its answer.

### A

▉ Turning to the first step, as noted in *Marcum*, Rule 16(b)'s "good cause" standard is more rigorous than the standard contained in Rule 15(a):

> Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief .... Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

163 F.R.D. at 254 (quoting *Johnson*, 975 F.2d at 609 (internal citations omitted)). In other words, "the touchstone of 'good cause' ... is diligence." *Id.* at 255.

[T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that [the movant] was diligent in assisting the Court in creating a workable Rule 16 order, ... (2) that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [the movant's] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, ... and (3) that [the movant] was diligent in seeking amendment of the Rule 16 order, once it because apparent that [the movant] could not comply with the order, ....

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607–08 (E.D.Cal.1999) (internal citations omitted).

In the case *sub judice*, the government proffers the following information in support of its motion to amend. On December 1, 1998, Dr. Huckaby moved to Lawrenceburg, Tennessee. (Gov't Mot. Ex. 1.) Prior to March 2, 2000, the only information the government had at its disposal was Dr. Huckaby's operative report, a pathology report, and a copy of Dr. Huckaby's responses to a request for admission from a case pending in the Circuit Court of Cabell County (hereinafter "state case").[6] (Gov't Mot. ¶ 4.) The operative report states that both ovaries and fallopian tubes were removed. (Gov't Mot. Ex. 2.) The pathology report states that only one ovary and one fallopian tube were received for examination. (Gov't Mot. Ex. 4.) Finally, Dr. Huckaby stated in an answer to a request for admission that the pathology report was not available when Mrs. Burton was discharged. (Gov't Mot. Ex. 7.)

On September 6, 2000, plaintiffs responded to the government's document requests and provided a complete set of Mrs. Burton's 1997 medical records.[7] On November 3, 2000, Dr. Huckaby was deposed at her office

---

6. The government does not offer an explanation as to why it did not obtain a complete copy of the case file from the Cabell County Clerk's Office prior to filing its answer.

7. Approximately a year after her hysterectomy, Mrs. Burton began to experience pain on the right side of her pelvis. An ultrasound was obtained which indicated a mass had developed. On December 11, 1997, G. Oakley, M.D., surgically removed the mass. (Gov't Mot. Ex. 5.)

in Lawrenceburg, Tennessee.[8] Dr. Huckaby testified that she removed both of Mrs. Burtons's ovaries and both fallopian tubes. (Huckaby's Dep. at 13.) She could not rule out, however, the possibility that a tissue remnant of an ovary or fallopian tube may have been left behind in Mrs. Burton's abdomen. (Huckaby's Dep. at 19.)

The government argues that at the time it filed its answer it had a reasonable belief that it did not have sufficient evidence to deny the allegations contained in paragraphs 6, 7, and 8 of the complaint because of the limited information available to it. Moreover, in abiding by Rule 11 of the Federal Rules of Civil Procedure, it had to evaluate "all of the factual evidence when making an admission or denial, not merely accepting without question Dr. Huckaby's operative report." (Gov't Reply at 2.) Furthermore, the government asserts that "[w]ith Dr. Huckaby admitting that she did not have the pathology report available to her at the time of Mrs. Burton's discharge, it reasonably appeared from a factual standpoint that only one ovary and fallopian tube had actually been removed." (Gov't Reply at 3.) It was not until the government received Mrs. Burton's 1997 medical records and presented them to Dr. Huckaby that it became clear that there was a sufficient factual basis for denying the allegations in paragraph 6, 7, and 8 of the complaint. Thus, the government contends that it has acted diligently and in good faith in the instant matter by filing its motion to amend its answer immediately upon discovering the above information.

Plaintiffs, on the other hand, do not assert any bad faith on the part of the government. (Pls.['] Resp. ¶ 8 n. 2.) Instead, they argue that Dr. Huckaby has acted in bad faith because she had nineteen months in which to lay out her account of the facts for an appropriate answer. They argue that she has had ample opportunity to engage in discovery and acquire any additional facts she might find relevant to support her account. Thus, plaintiffs contend that the government's motion should be denied because of Dr. Huckaby's lack of diligence.

After carefully reviewing the operative report, the pathology report, and the discovery document, the Court finds that the government had a reasonable basis for admitting liability in its initial answer. In comparing the operative and pathology reports, it appears to the Court that the pathology report is more persuasive than the operative report. Moreover, the pathology report was prepared by an individual who is not a party to the instant litigation. The Court also notes that Dr. Huckaby has no independent recollection of Mrs. Burton's surgery. (Huckaby's Dep. at 25–26.) Consequently, a consultation with Dr. Huckaby before filing the answer would not have cured the government's error. Thus, until the government had obtained Mrs. Burton's 1997 medical records and confronted Dr. Huckaby with them, the government lacked a good faith basis to deny the allegations in paragraphs 6, 7, and 8 of the complaint. In such a situation, it would have been improper under Rule 11 for the government to deny those allegations. The Court also recognizes that it would have been very difficult, prior to filing the answer, for the government to have obtained a copy of Mrs. Burton's 1997 medical records, given the current laws on privacy. Therefore, it appears to the Court that the government has acted diligently in this matter. Finally, the plaintiffs do not assert any bad faith on the government's part. Rather, they have alleged bad faith on the part of a nonparty, Dr. Huckaby. The actions of a nonparty are immaterial to the determination of whether a party has acted diligently in a matter. Hence, the Court finds plaintiffs' argument to be groundless.

In sum, the Court finds that (1) the government's initial responses to the complaint were made in good faith and in accordance with Rule 11; (2) the information obtained from Dr. Huckaby's deposition provides a sufficient basis to deny the allegations in paragraphs 6, 7, and 8 of the complaint; (3) it does not appear that the government could have reasonably obtained the new information without Mrs. Burton's 1997 medical records; and, (4) the government acted quickly, decisively, and correctly when confronted

---

8. The government attached a copy of Dr. Hucka-  by's November 3, 2000 deposition to its reply.

with its error, unlike the litigants in *Marcum, supra, Johnson, supra, Smith, supra,* and *Holland, supra.* Therefore, the Court holds that the government has satisfied the first step of the *Marcum* test, Rule 16(b)'s "good cause" standard.

## B

■ Turning to the second step of the *Marcum* analysis, Rule 15(a) of the Federal Rules of Civil Procedure permits the amendment of a pleading, with leave of the court, after a responsive pleading has been served. The Rule further provides that "leave shall be freely given when justice so requires." In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the United States Supreme Court stated:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. . . . In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.* at 182, 83 S.Ct. 227.

The Fourth Circuit, in interpreting *Foman,* ruled that "a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay absent any resulting prejudice or evidence of dilatoriness was not sufficient justification for denial." *Ward Electronics Service, Inc. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir. 1987) (citing *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.), *cert. dismissed,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980)). The court, however, also warned that district courts have the discretion "to deny leave to amend based upon a balancing of the equities, including whether the non-moving party will be prejudiced, whether additional discovery will be required, and whether the court's docket will be strained." *Barnes Group, Inc. v. C & C Prods., Inc.,* 716 F.2d 1023, 1035 n. 35 (4th Cir.1983). *See also Dix v. Brownell,* 141 F.Supp. 789, 791–92 (E.D.N.Y.1956) (withdrawal of admission allowed because trial not imminent and merits of case predominate over pleadings); *Currie v. United States,* 111 F.R.D. 56, 56 (M.D.N.C.1986) (allowed an admission to be withdrawn because the movant had not acted in bad faith and the trial would not be significantly delayed).

■ In the case *sub judice,* the government contends that its amended answer will not prejudice the plaintiffs or delay the resolution of this action because discovery has not closed. It also argues that the amended answer places no additional burdens of proof on the plaintiffs, other than those assumed when plaintiffs filed their complaint.

The plaintiffs, on the other hand, argue that Dr. Huckaby's 180 degree turn has caused them prejudice. Plaintiffs represent to the Court that their counsel has spent considerable hours preparing the case based on the original answer. The plaintiffs also represent that they have gone to great expense in acquiring experts.

It appears to the Court that the government's proposed amended answer will not prejudice the plaintiffs unfairly. It may be true that plaintiffs' counsel has spent considerable hours preparing his case based on the original answer. Nevertheless, the plaintiffs have not indicated how they have changed their position, to their detriment, in response to the government's admission of liability. Thus, there is no evidence before this Court of unfair prejudice to the plaintiffs. Moreover, the granting of the government's request will not waste any of plaintiffs' financial resources because the added burden of proving liability should not alter their argument concerning damages. Rather, the plaintiffs are resuming the burden of proving liability, a burden they had when they filed this case. The Court also notes that discov-

ery has not closed and that plaintiffs have not alleged any bad faith on the government's part. Therefore, the Court rejects plaintiffs' prejudice and bad faith arguments and finds that the government, in accordance with *Foman*, has satisfied Rule 15(a)'s standard.

Inasmuch as the government has met the "two-part analysis" outlined in *Marcum*, the Court holds that there is sufficient justification for granting the government's request to amend its responses to the allegations contained in paragraphs 6, 7, and 8 of the complaint.

### III

On the basis of the foregoing, it is **OR-DERED** that the government's motion to amend its answer be, and is, **GRANTED.** It is further **ORDERED** that the government's counsel shall file its amended answer with the Clerk of this Court within fourteen days of entry of this Order and promptly serve a copy of the amended answer on plaintiffs' counsel.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record.